UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUCE TAYLOR, *on behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>JB HUNT TRANSPORT SERVICES, INC.,<br><br>Defendant. | C.A. NO. 22-4832<br><br>JURY TRIAL DEMANDED |

### AMENDED COMPLAINT – CLASS ACTION

On behalf of himself and all others similarly situated, Plaintiff Bruce Taylor ("Plaintiff" or "Mr. Taylor"), by and through his attorneys, respectfully alleges as follows:

### NATURE OF THE ACTION

1. This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), brought on behalf of applicants for employment with Defendant J.B. Hunt Transport Services, Inc. ("J.B. Hunt"). Plaintiff contends that Defendant systematically violates section 1681b(b)(3) of the FCRA by using a consumer report to make an "adverse" employment decision without, beforehand, providing the person who is the subject of the report a copy of the report and a summary of rights under the FCRA, leaving the person who is the subject of the report without any time, much less sufficient time, to dispute the report.

2. The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they

disseminate. 15 U.S.C. § 1681(b). Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users of consumer reports," such as J.B. Hunt. This action involves Defendant's systematic violations of several of those important rules.

3. Plaintiff was denied employment as a driver at J.B. Hunt based on a standardized background screen conducted by Carco Group, Inc., d/b/a Driver iQ ("Driver iQ") pursuant to an agreement between Driver iQ and Defendant whereby Driver iQ performs a standardized background screen on all of Defendant's candidates for hire or promotion. Driver iQ misidentified Plaintiff as not eligible for the job based on the purported criminal record involving a felony conviction.

4. In violation of the FCRA, Defendants willfully and negligently failed to provide Plaintiff with the mandatory "pre-adverse action notice" and a copy of the flagrantly inaccurate background report it obtained from Driver iQ, *before* the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3). Every year, individuals who have applied to J.B. Hunt for employment have been similarly aggrieved by the same violation of 15 U.S.C. § 1681b(b)(3).

5. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for himself and a class of similarly situated employment applicants and employees who were required to sign Defendant's job application disclosure form that violated section 1681b(b)(2) and to whom Defendant failed to provide the "pre-adverse action notice" required by 15 U.S.C. § 1681b(b)(3).

## PARTIES

6. Plaintiff is an adult individual residing in West Collingswood City, New Jersey.

7. Upon information and belief, Defendant J.B. Hunt is a company headquartered and incorporated in Arkansas. Generally, J.B. Hunt "provides a variety of freight transportation

services to customers throughout the United States, Canada, and Mexico." (www.jbhunt.com, "Our Company") (last accessed June 3, 2022).

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant regularly conducts business in the State of New Jersey. Defendant J.B. Hunt is a corporation licensed to do business in the State of New Jersey, regularly conducting business in New Jersey and at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

10. Defendant claims that it is "one of the largest supply chain solutions providers in North America," which, as recently as November of 2021, touted its "recently expanded facility in Jersey City, New Jersey." https://www.jbhunt.com/our-company/newsroom/2021/11/211104-j-b--hunt-launches-new-transload-service-supporting-the-n.html (last accessed June 3, 2022). Where a defendant's contacts are "continuous and systematic," a court may properly exercise general personal jurisdiction over the defendant, even where the defendant's presence in the forum bears no relation to plaintiff's claim against it. *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 322 (1989).

## STATEMENT OF FACTS

**Background:  Defendant's Use of Driver iQ's Screening Activities**

11. Driver iQ is, for the trucking industry, among the largest of the nation's employment background screening companies, *i.e.,* those that provide "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), to prospective employers and employers.

12. Driver iQ investigates and reviews public record databases and assembles and/or maintains consumer files which contain public record information concerning, among other things, the alleged criminal record history of individuals.

13. From its files, Driver iQ sells consumer reports to potential employers (such as Defendant) wishing to investigate the criminal record history, or lack thereof, with regard to various job applicants or employees.  According to its website, Driver iQ "understands the necessity of performing secure, accurate and up-to-date background checks for your applicants and employees."  https://www.driveriq.com/what-we-do/ (last accessed June 3, 2022).

14. In addition to providing background reports, Driver iQ provides to its employment screening customers the following background services:  Previous Record of Employment and Driver School Record Verification; Driving Records; Criminal History; Education & Military Verification; Eligible for Rehire Notifications; Current Employee Retention Notification. https://www.driveriq.com/what-we-do/ (last accessed June 3, 2022).

15. JB Hunt uses Driver iQ's screening services for job applicants and/or newly hired employees.

16. Under the FCRA, a "user" of a consumer report, such as JB Hunt, who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant, and must

include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action. 15 U.S.C. § 1681b(b)(3)(A).

17. The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the job applicant or employee that he is about to experience an adverse action, such as a rejection, based on the content of a report, and to provide him an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect or job is lost.

18. In negligent, reckless and willful disregard of the requirements of the FCRA, Defendant takes immediate adverse action against job applicants who have a disqualifying criminal record without providing them with a copy of the report, notice of potential adverse action and an opportunity to review and/or dispute the record.

**The Facts Pertaining to Class Representative Plaintiff Bruce Taylor**

19. Plaintiff Bruce Taylor applied for employment with JB Hunt as a driver in or around March 2022.

20. Mr. Taylor was qualified for the position.

21. After an interview, JB Hunt made an offer of employment to Mr. Taylor contingent upon drug screen and background check results.

22. In connection with Mr. Taylor's application, JB Hunt purchased a background screening report from Driver iQ for the purpose of evaluating his eligibility for employment.

23. On or about March 12, 2022, using its usual practices and procedures, Driver iQ compiled and furnished criminal records data for use in a consumer background report to Defendant JB Hunt regarding Mr. Taylor.

24. On or about March 18, 2022, while Plaintiff was accompanying a JB Hunt driver for training purposes, JB Hunt contacted Plaintiff and advised him that he was terminated.

25. JB Hunt did not provide Plaintiff with a reason for the termination or a copy of the March 12, 2022, Driver iQ report.

26. Immediately thereafter, Mr. Taylor attempted to reach JB Hunt to understand why he had been terminated.

27. After several failed attempts, Mr. Taylor made contact with JB Hunt on or about April 14, 2022, and JB Hunt's representative verbally informed Mr. Taylor that it terminated him due to a felony criminal charge in his history.

28. JB Hunt still had not provided Plaintiff with a copy of the Background Report.

29. Thereafter, Plaintiff completed an authorization form from JB Hunt and repeatedly sent it to JB Hunt to gain a copy of his Background Report.

30. Plaintiff finally received a physical copy of the Background Report on or about May 7, 2022, after his being termination of employment.

31. Upon review of the report, Plaintiff discovered the felony record that was the cause of his termination. The criminal record was completely inaccurate, as Plaintiff does not have any criminal record and therefore the record belonged to another individual.

32. Plaintiff was deprived of an opportunity to dispute the report's accuracy, and/or explain its obvious inaccuracy with Driver iQ and with J.B. Hunt prior to his termination.

33. J.B. Hunt never sent Mr. Taylor a "Notice of Adverse Action" letter.

34. J.B. Hunt denied Mr. Taylor's application for employment based partly or solely upon the felony criminal charge inaccurately reported on his background check.

35. As a direct result of Defendant's unlawful use of the Driver iQ background report, Mr. Taylor lost the job at J.B. Hunt, and suffered financial loss in the form of lost wages.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class defined as follows:

> All employees of Defendant J.B. Hunt Transport, Inc. or applicants for employment with Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report that was used by Defendant to make an adverse employment decision regarding such employee or applicant for employment, within two years prior to the filing of this action and extending through the resolution of this case, and for whom Defendant failed to provide the employee or applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action.

37. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

38. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. Upon information and belief, J.B. Hunt obtains hundreds if not thousands of consumer reports on employees and applicants for employment each year, and those persons' names and addresses are identifiable through documents maintained by J.B. Hunt.

39. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

   a) Whether Defendant failed to provide each employee or applicant for employment a copy of their consumer report at least five business days before they took adverse action based upon the consumer report;

    b)  Whether Defendant failed to provide each employee or applicant for employment a copy of their written notice of FCRA rights at least five business days before they took adverse action based upon the consumer report;

    c)  Whether Defendant acted willfully or negligently in disregard of the rights of employees and applicants in their failure to permit their employees and automated systems to send consumers (employees and applicants) their full consumer report and a written statement of their FCRA rights at least five business days before taking adverse action based on the consumer report.

  40.  **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for statutory and punitive damages that he seeks for absent class members.

  41.  **Adequacy. Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the Class.  His interests are aligned with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of members of the Class.

  42.  **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the

Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## CAUSES OF ACTION

### COUNT I
### Failure to Provide Pre-Adverse Action Notice Requirements
### Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)
### (On behalf of Plaintiff and Class)

43. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

44. Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

45. The Driver iQ background reports ordered by Defendant are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

46. The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer with a copy of the report *and* a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

47. For purposes of this requirement, an "adverse action" includes "any … decision … that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

48. Defendant J.B. Hunt is a "person" that regularly uses Driver iQ background reports for employment purposes.

49. The FCRA requires Defendant, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

50. Defendant willfully or negligently violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the members of the Class the following before using such reports: (a) the required Pre-Adverse Action Notice; (b) a copy of the consumer report; and, (c) a written description of the consumer's rights under the FCRA, and thereby denied the consumers sufficient time to be able to review and dispute the report before Defendants took adverse action on their employment applications, promotion applications or employment.

## COUNT II
### Negligence
### (On behalf of Plaintiff individually)

51. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

52. Defendant had a duty to screen Plaintiff's application for employment in a reasonable manner.

53. Defendant breached said duty by relying on a false background check, that it had reason to know was false, to deny Plaintiff employment. The report at page 20 says the real criminal was sentenced to 30 months imprisonment on July 20, 2021 – this puts JB Hunt on notice that the real criminal was incarcerated for a federal felony charge at the time of the report's creation in March 2022, only 8 months later. Thus, Defendant had sufficient reason to know the real criminal was not Plaintiff, and therefore a reasonable person would not have relied on the report to make an employment decision regarding Plaintiff.

54. Defendant was negligent in the following respects:

    a) failing to institute appropriate policies and procedures to comply with applicable laws;

    b) failing to institute policies, train personnel, and supervise personnel regarding screening of prospective employees including but not limited to evaluation of employment background check reports;

    c) failing to hire competent and/or honest personnel, such as salespeople;

    d) failing to supervise its personnel.

55. Defendant's actions were based upon false information furnished with malice or willful intent to injure Plaintiff.

56. Plaintiff suffered actual damages proximately caused by this negligence as alleged above including but not limited to a temporary loss of employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief as follows:

A. An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of actual, statutory and punitive damages for Plaintiff and the Class;

C. An award of pre-judgment and post-judgment interest as provided by law;

D. An award of attorneys' fees and costs; and,

E. An award of

F. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: September 26, 2022

By: /s/James A. Francis
 James A. Francis (NJ Bar #012601996)
**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis (#012601996)
John Soumilas (#020371999)
Lauren KW Brennan (#074202013)
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel:  (215) 735-8600
Fax:  (215) 940-8000
Email:  jfrancis@consumerlawfirm.com
            jsoumilas@consumerlawfirm.com
            lbrennan@consumerlawfirm.com

Robert P. Cocco
ROBERT P. COCCO, P.C.
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
bob.cocco@phillyconsumerlaw.com

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ James A. Francis*
James A. Francis