[ECF No. 77]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

---

**BRUCE TAYLOR,**
*Individually and on behalf of all others similarly situated,*

**Plaintiff,**

v.

**J.B. HUNT TRANSPORT SERVICES, INC.,**

**Defendant.**

---

**Civil No. 22-4832 (MJS)**

**OPINION & ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT AND DIRECTING NOTICE TO SETTLEMENT CLASS MEMBERS**

---

This matter is before the Court on the unopposed motion by plaintiff Bruce Taylor ("Plaintiff") for preliminary approval of a class action settlement. ECF No. 77. Plaintiff seeks an order: (1) granting preliminary approval of the proposed settlement agreement (the "Agreement") (ECF No. 77-1); (2) approving the parties' stipulated protocol to distribute notice to potential class members and for such recipients to submit any objections to the settlement; (3) setting a deadline for submission of an application for class counsel fees; and (4) scheduling a hearing for final approval of the settlement. Id. at 34-37. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), the Court decides this motion without oral argument. For the reasons that follow, Plaintiff's motion is **GRANTED**.

### I.    Procedural History

Plaintiff filed the complaint in this class action in the Superior Court of New Jersey on June 22, 2022. ECF No. 1-1 at 3. Plaintiff asserted claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., "on behalf of applicants for employment with" Defendant for its

1

alleged reliance on certain "consumer report[s] to make an 'adverse' employment decision without" providing job applicants an opportunity to dispute the content of the reports. Id.

Defendant removed the litigation to this Court on July 29, 2022. ECF No. 1. Plaintiff thereafter filed an amended complaint alleging (1) failure to provide pre-adverse action notice under FCRA, 15 U.S.C. §1681b(b)(3) (on behalf of Plaintiff and the class); and (2) negligence (on behalf of Plaintiff individually). Plaintiff defines the class as:

> All employees of Defendant J.B. Hunt Transport, Inc. or applicants for employment with Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report that was used by Defendant to make an adverse employment decision regarding such employee or applicant for employment, within two years prior to the filing of this action and extending through the resolution of this case, and for whom Defendant failed to provide the employee or applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action.
>
> [ECF No. 12 at 7.]

Defendant filed an answer on October 10, 2022, denying any liability under the amended complaint. ECF No. 13. The parties engaged in discovery and on November 8, 2024, filed a motion for approval of the present settlement. ECF No. 77. The parties have consented to resolution of all further proceedings in this matter by the undersigned magistrate judge. ECF No. 76.

## II.    Legal Standard

Settlement of class actions requires court approval. Fed. R. Civ. P. 23(e). Such approval requires "a hearing" and a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Fairness depends on the adequacy of class counsel's representation of the class, the

arm's length nature of the settlement, the adequacy of the relief contemplated for the class, and the equitable treatment of class members relative to each other. Fed. R. Civ. P. 23(e)(2).

Procedurally, this approval entails (1) the Court's preliminary review of the proposed settlement; (2) notice to class members of the proposed settlement; (3) a fairness hearing; and (4) the Court's final certification of the class and final approval of the settlement. See Hacker v. Elec. Last Mile Sols. Inc., 722 F.Supp.3d 480, 488 (D.N.J. 2024).

The Court is currently at the first step of this process, and therefore must decide whether the proposed settlement is "likely" to be approved and the proposed class "likely" to be certified. Id. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." Powell v. Subaru of America, Inc., Civ. No. 19-19114, 2024 WL 4381832, *7 (D.N.J. Oct. 3, 2024) (quoting Zimmerman v. Zwicker & Assocs. P.C., Civ. No. 09-3905, 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011).

## III.    The Agreement

The Agreement defines the class as:

> All employees of [Defendant] or applicants for employment with Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report that was used by Defendant to make an adverse employment decision regarding such employee or applicant for employment, and for whom Plaintiff alleges Defendant failed to provide the employee or applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action, from June 22, 2020 through September 11, 2024.

> [ECF No. 77-1 at 8.][1]

---

[1]  Although the Court traditionally cites to the pagination of documents, not the blue header automatically added to documents filed on the docket, see THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION B17.1.4, at 26 (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020), ECF

Based on Defendant's records, the parties estimate the class consists of 14,915 members, 5,681 of whom appear to not have received any pre-adverse action notice or a copy of the report before suffering adverse employment outcomes. Id.

In exchange for a release of all class claims, Defendant agrees to establish a settlement fund of $5,000,000 to compensate class members, settlement administrators, and class counsel. Id. at 9. Specifically, $2,239,966.32 is reserved for pro rata payments to members of the No Notice Subgroup, $923,400 for automatic payments to class members who are not part of the No Notice Subgroup, $15,000 for Plaintiff as class representative including for an individual settlement of his claims, $52,000 for settlement administration, and approximately one-third of the fund, plus $26,367.01, for attorneys' fees and expenses, subject to Court approval, with any remaining funds "delivered to the National Consumer Law Center as *cy pres* recipient, subject to Court approval." Id. at 10. Additionally, Defendant "agrees that since the filing of this lawsuit, it has reviewed and revised its policies and procedures to comply with FCRA section 1681(b)(3) for both job applicants and existing employees, and as part of this settlement agrees to continue to review, improve and implement such policies and procedures." Id. at 9.

## IV.    Discussion

The parties request that the class be certified for settlement purposes only. ECF No. 77-2 at 13. Such certification "is appropriate where the prospective class establishes: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); (4) and the

---

No. 77-1 is one PDF with several paginated documents within, thus the Court references ECF No. 77-1 by the pagination in the header.

representative parties will fairly and adequately protect the interests of the class." In re HealthEC LLC Data Breach Litig., Civ. No. 24-26, 2025 WL 1603267, at *4 (D.N.J. June 6, 2025) (citing In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 426 (3d Cir. 2016)). If these Rule 23(a) criteria are met, the court must also address whether the litigation fits into one of the categories of Rule 23(b). In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 309 (3d Cir. 1998)

Rule 23(a) Criteria

Numerosity: "Generally, the numerosity requirement is satisfied if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40." HealthEC, 2025 WL 1603267 at *4 (citing Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 595 (3d Cir. 2012)). This requirement is easily satisfied in this case, as the parties represent that "Defendant's records indicate that there are 14,915" members of the proposed class. ECF No. 77-1 at 8.

Commonality: Rule 23(a)(2) "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' and their claims must depend on a common contention of such a nature that it is capable of class-wide resolution." Id. (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-50 (2011)). "Being capable of class-wide resolution 'means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Id. (quoting Dukes, 564 U.S. at 349-50). This requirement is also easily satisfied in this case, as each class member suffered damages under Defendant's "same standardized practices to use consumer reports to make adverse employment decisions about employees and applicants for employment, and to notify them regarding the results of its review of such reports." ECF No. 77-2 at 15. Other classes alleging FCRA violations have satisfied commonality under similar theories. See Miller v. Trans Union,

5

LLC, Civ. No. 12-1715, 2017 WL 412641, at *8 (M.D. Pa. Jan. 18, 2017); <u>Soutter v. Equifax Info. Servs., LLC</u>, 307 F.R.D. 183, 199 (E.D. Va. 2015).

<u>Typicality</u>: This requirement "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" <u>Newton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.</u>, 259 F.3d 154, 182-83 (3d Cir. 2001) (quoting <u>Barnes v. Am. Tobacco Co.</u>, 161 F.3d 127, 141 (3d Cir. 1998)). Counsel argues that Plaintiff's claim is typical of the claims of the proposed class members because Plaintiff and the other members of the proposed class all received adverse employment outcomes from Defendant in reliance on consumer credit reports Defendant did not provide to Plaintiff and the other members before taking adverse action against them. ECF No. 77-2 at 15-16. Since "typicality is satisfied 'if the claims arise from the same event or course of conduct and are based on the same legal theory,'" <u>Miller</u>, 2017 WL 412641 at *9 (quoting <u>Baby Neal for and by Kanter v. Casey</u>, 43 F.3d 48, 58 (3d Cir. 1994)), the uniform theory of liability asserted by Plaintiff and the other proposed class members satisfies typicality.

<u>Adequacy of Representation</u>: "Rule 23(a)(4) requires class members to 'fairly and adequately protect the interests of the class'" and "tests the qualifications of class counsel and the class representatives . . . to root out conflicts of interest within the class to ensure that all class members are fairly represented in the negotiations." <u>In re Nat'l Football League Players Concussion Injury Litig.</u>, 821 F.3d at 428. The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." <u>Id.</u> (quoting <u>Dewey v. Volkswagen Aktiengesellschaft</u>, 681 F.3d 170, 183 (3d Cir. 2012)). The parties represent "Plaintiff has no interests that are antagonistic to the interests of

the Settlement Class and is unaware of any actual or apparent conflicts of interest between him and any Settlement Class Member." ECF No. 77-2 at 9. Plaintiff's service award appears aligned with other class representative compensation.[2] See Sapp v. Experian Info. Sols., Inc., Civ. No. 10-4312, 2013 WL 2130956, at *3 (May 15, 2013); In re Schering-Plough Corp. Enhance Secs. Litig., Civ. No. 08-397, 2013 WL 5505744, at *37 (D.N.J. Oct. 1, 2013). Class counsel must have "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." Id. Counsel's experience is well-recognized. See Brooks v. Trans Union, LLC, 743 F.Supp.3d 622, 644 (E.D. Pa. 2024) (finding Plaintiff's law firm "has served as class counsel in over 70 class actions" and "has been recognized for specialized expertise in litigating FCRA cases such as this one"). In the nearly three years that this case has been pending, counsel have filed original and amended complaints and pursued discovery (including briefing and resolving disputes with the undersigned). ECF Nos. 1, 12, 50. The settlement was reached after mediation with an experienced and independent third-party and additional negotiations between experienced counsel, and no objections to its terms or other problems have been raised to the court. The Court accordingly finds the class members have been fairly and adequately represented.

### Rule 23(b) Analysis

Having found the proposed settlement class satisfies Rule 23(a), the Court determines whether "the class fits within one of the three categories of class actions defined in Rule 23(b)." Prudential, 148 F.3d at 309. Here, Plaintiff moves under Rule 23(b)(3), which addresses class actions where "the court finds that the questions of law or fact common to class members

---

[2] The $15,000 reserved for Plaintiff includes payment of an individual settlement and the service award. In counsel's submission in support of final approval of the settlement, counsel should further clarify this allocation.

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Predominance: Plaintiff asserts "the success or failure of Plaintiff's claim and that of the class will depend upon the same core evidence and legal issues: J.B. Hunt's practices for obtaining and using consumer report[s] for employment purposes and its practices for notifying consumers concerning the results of its review, including its alleged failure to send notice until after the adverse action has already occurred, whether J.B. Hunt's conduct was willful, or merely negligent; and other common fact and legal issues readily demonstrate that this suit for statutory damages of $100-$1,000 per class member could be tried with common evidence." ECF No. 77-2 at 18. The main facts Plaintiff would need to prove at trial to establish liability— the employer's consideration of credit reports without notice to employees before making employment decisions—appear to be readily provable with the same evidence of Defendant's general corporate policies. See Taha v. Cnty. of Bucks, 862 F.3d 292, 309 (3d Cir. 2017) (discussing predominance where individual class member recovery is based on common evidence of the willfulness of a defendant's conduct). Accordingly, the proposed class satisfies predominance.

Superiority: This inquiry depends on: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). "The superiority requirement asks the court 'to balance, in terms of fairness and efficiency,

the merits of a class action against those of "alternative available methods" of adjudication.'" Prudential, 148 F.3d at 316. Case management problems can jeopardize superiority. Id. (referencing the added complexity of subclasses to represent class members with conflicting interests). Here, the proposed class contains all employees and applicants for employment with Defendant who suffered an adverse employment decision based on a credit report that was not provided to the employee or applicant at least five business days before the decision. ECF No. 77-1 at 6 § 1.14. Of that class, there is one subgroup for individuals who never received "any pre adverse action notice or copy of the relevant consumer credit report." Id. at 6 § 1.15. This subgroup contains approximately 5,681 of the 14,915 total class members. Id. at 8 § 2.2. The subgroup is expected to receive approximately $400 per member, whereas members of the class who are not in the subgroup are expected to receive $100 each. Id. at 9-10 §2.7.1. Notably, the amount distributed to the subgroup may increase, as the $100 checks uncashed by class members who opt out or otherwise do not claim their $100 will be pooled and distributed pro rata among the members of the subgroup. Id. at 11 § 2.11. Although this proposed class contains a subgroup, prosecution as a class action is still appropriate because only one fact differentiates the statutory damages the subgroup seeks, and the parties have appropriately structured the settlement to limit unbalanced receipt of funds by differently situated class members. Especially at this preliminary approval stage, the approximately $100 to $400 each class member may receive appears to be a fair exchange for the potential recovery of $100 to $1,000 in statutory damages available if Plaintiffs succeeded at trial and proved *willful* violations by Defendant. ECF No. 77-2 at 11. The relative size of these statutory damages pales in comparison to the costs attendant to litigation of these claims individually, bolstering the superiority of litigating these claims as class action versus other strategies.

Rule 23(e) Analysis

Courts may approve a proposed class action settlement if "it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The Third Circuit has guided this analysis with the so-called "Girsh factors[3] and the Prudential factors.[4]" In re Google Inc. Cookie Placement Consumer Privacy Litig., 934 F.3d 316, 322 (3d Cir. 2019). Where, as here, the proposed

---

[3] The Girsh factors, which a court must apply, are: '(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.' Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir.1975).

[4] The Prudential factors, which a court may apply if relevant, are: (1) 'the maturity of the underlying substantive issues . . . the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages'; (2) the 'existence and probable outcome of claims by other classes and subclasses'; (3) 'the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants'; (4) 'whether class or subclass members are accorded the right to opt out of the settlement'; (5) 'whether any provisions for attorneys' fees are reasonable'; and (6) 'whether the procedure for processing individual claims under the settlement is fair and reasonable.' In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 323 (3d Cir. 1998).

settlement provides for a *cy pres* fund to receive any unclaimed settlement funds, the Court must also evaluate "the degree of direct benefit provided to the class." <u>In re Baby Prods. Antitrust Litig.</u>, 708 F.3d 163, 174 (3d Cir. 2013). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." <u>Girsh</u>, 521 F.2d at 156.

The Court discussed above the adequacy of the class's representation by counsel and the class representatives. Further, the parties represent that the agreement was reached through arm's length negotiation between counsel. ECF No. 77-2 at 10. The Court thus proceeds to evaluate subsections C (adequacy of relief for the class) and D (equitable treatment of class members) of Rule 23(e)(2) through the lens of the <u>Girsh</u> factors:

<u>Factor 1: Complexity of the Litigation</u>: Although proving Defendant's willful decision not to provide consumer credit reports to job applicants and potential employees would not appear to require significant expert testimony or other resources attendant to complex litigation, the cost of counsel litigating the case to trial and deposing and examining witnesses is still multiples of the $100 to $1,000 in statutory damages each class member can, at most, recover.

<u>Factor 2: Reaction of the Class to the Settlement</u>: Although the Court has received no objections to the settlement, this factor may become relevant later, at the final approval stage, after notice has been distributed to class members.

<u>Factor 3: Stage of Proceedings and Progress in Discovery</u>: "The parties must have an 'adequate appreciation of the merits of the case before negotiating." <u>Prudential</u>, 148 F.3d at 319 (quoting <u>In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig. (G.M. Trucks)</u>, 55 F.3d 768, 813 (3d Cir. 1995)). In the nearly three years that this case has

been pending, counsel have filed original and amended complaints and pursued discovery (including briefing and resolving disputes with the undersigned). ECF Nos. 1, 12, 50. Based on the precise estimates of the sizes of the class and subclass, and Defendant's commitment in the agreement to provide the settlement administrator with a list of each class member's name, most recent mailing address, class membership, and other details, the parties appear to have exchanged sufficient information to reach an informed settlement. Nevertheless, objectors, to the extent there are any, will have an opportunity once they have been notified of the proposed settlement, and before it is finalized, "to test by discovery the strengths and weaknesses of the proposed settlement." Girsh, 521 F.2d at 157.

The "fourth, eighth, and ninth Girsh factors" are distillable into one inquiry: is the risk to Plaintiffs that Defendant would win at trial "large enough to justify the proposed settlement," which is $5,000,000 [ECF No. 77-1 at 9 § 2.7] on an estimated aggregate loss of $1,491,500 to $14,915,000?[5] Hacker v. Elec. Last Mile Sols., 722 F.Supp.3d 480, 499 n.29 (D.N.J. 2024). Based on the record developed by the parties and the representations within the motion seeking preliminary approval of the settlement, the answer appears to be yes. Although Defendant's records appear to reflect whether notice was sent to class members before adverse employment action was taken against them, the willfulness of Defendant's conduct does not appear to have been conclusively determined by discovery, and the parties represent significant costs would be incurred in defending a motion for summary judgment presumably to be filed by Defendant, obtaining class certification, proving liability at trial, and succeeding on appeal. While these costs may be spread across the class, they remain significant in comparison to the

---

[5] The parties estimate the statutory damages as $100 to $1,000 per class member if *willful* FCRA violations were established. The referenced range multiplies these amounts by the 14,915 class members.

$100 to $1,000 potentially recoverable by each class member. That recovery could also fail to materialize if Plaintiff was unsuccessful in accomplishing any one of these objectives. Accordingly, and especially at this preliminary approval stage, the proposed settlement distributing awards within each class member's range of potential recovery appears adequately adjusted for the risk of failing to recover through further litigation.

Factor 5: Risk of Establishing Damages: This risk is the same as the risk of establishing liability, as Plaintiffs seek statutory damages tied to each instance of Defendant's alleged conduct. ECF No. 77-2 at 17-18 (citing Taha, 862 F.3d at 309 (discussing predominance where individual class member recovery is based on common evidence of the willfulness of a defendant's conduct).

Factor 6: Risk of Maintaining the Class Action Through Trial: Although "Plaintiff believes that the claims asserted in the lawsuit have merit and that if the case did not settle they would prevail at trial," Defendant "has presented arguments supporting strong defenses to the action and if tried, it believes it would succeed on the merits." ECF No. 77-1 at 3. This uncertainty of success at trial, "including proceedings involving class certification," prompted the proposed settlement. Id. at 4.

Factor 7: Ability of Defendant to Withstand a Greater Judgment: The parties have not supplied the Court with information concerning Defendant's ability to bear a greater judgment, for example with an opinion that the company's credit rating would be affected by a larger judgment. Prudential, 148 F.3d at 322. The Court has not been supplied with any information to suggest payment of this judgment would jeopardize Defendant's continued operation as a going concern.

_Cy Pres_ Fund Considerations: "[A] district court does not abuse its discretion by approving a class action settlement agreement that includes a _cy pres_ component directing the distribution of excess settlement funds to a third party to be used for a purpose related to the class injury." Baby Prods., 708 F.3d at 172-73. Nevertheless, the Court "should subject the settlement to increased scrutiny" to avoid "a potential conflict of interest between class counsel and their clients because the inclusion of a _cy pres_ distribution may increase a settlement fund, and with it attorneys' fees, without increasing the direct benefit to the class." Id. No such concern appears present here, where the _cy pres_ recipient, the National Consumer Law Center, is only paid any funds not claimed by class members or awarded as attorney's fees. ECF No. 77-1 at 11-12 § 2.12.

## The Protocols for Class Members to Receive Notice and Object

"The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). "For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Id. "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Id.

The proposed settlement provides for notice of the agreement to be distributed to class members by Verita Global, the chosen settlement administrator,[6] pursuant to the notice protocol at § 4 of the agreement. ECF No. 77-1 at 13-16. Notice will be sent primarily via email in the form attached to this motion as Exhibit C [ECF No. 77-1 at 40] as "Defendant represents that it maintains electronic mail addresses for some of the Settlement Class Members and communicates with consumers via electronic mail in the ordinary course of its business." Id. at 13 § 4.2. "For Settlement Class Members for whom no electronic mail address is available, or whose electronic mail notices were returned as undeliverable after the second attempt," notice shall be sent by U.S. mail in the form attached to this motion as Exhibit D [ECF No. 77-1 at 42]. Id. at 14 § 4.3.2. Additionally, a website will be established with "frequently asked questions and answers, pleadings, relevant litigation documents, and contact information for Class Counsel," including the long form notice attached as an exhibit to this motion [ECF No. 77-1 at 45]. Id. at 14 § 4.4. A "Telephone Assistance Program" will also be established with "a toll-free telephone number, which will have recordings that answer questions from the Settlement Class Members . . . in Spanish as well as English." Id. at 15 § 4.5. Class members may opt out of the settlement by replying by email or U.S. mail to the "electronic mail address provided on the settlement website and in the class notices, or to the

---

[6]  The Court has not been supplied with specific information supporting Verita Global's appointment as settlement administrator, but observes "Verita has experience in serving as a class administrator in data breach cases and has been recognized as such in this circuit." HealthEC, 2025 WL 1063267 at *13 (citing In re Phil. Inquirer Data Sec. Litig., Civ. No. 24-2106, 2024 WL 4582881, at *6 (E.D. Pa. Oct. 25, 2024) (Verita is "a nationally recognized claims administrator that has handled dozens of similar data breach settlements")). The Court accordingly finds adequate the parties' chosen settlement administrator.

address provided on the settlement website and in the class notices." Id. at 15 § 5.1. Objections by class members may be filed directly with the Clerk of Court with service on all counsel. Id. at 16 § 6.1.

The proposed email and mail forms of notice contain the information required by Rule 23(c)(2)(B). The forms define the action, the class, and the parties' claims and defenses, permit members to appear through an attorney, provides an option to opt-out, and references the binding effect of a judgment. ECF No. 77-1 at 40, 42. The long form of notice that will be posted on the website contains answers to eighteen basic questions regarding the settlement and the litigation process following preliminary approval. Id. at 45. This information should reach class members, as Defendant "maintains email addresses for applicants and employees, and regularly communicates with individuals via email." ECF No. 77-2 at 6. If email is unsuccessful, class members will receive notice by mail to an address updated "through the USPS National Change of Address database and utilize an address verification resource to identify missing addresses." ECF No. 77-1 at 14 § 4.3.2. This approach appears adequately crafted to supplement the traditional form of notice by mail with the more modern and efficient form of notice by email, which is especially appropriate in this case where the parties primarily communicate by email in the ordinary course of business.

<u>Fees for Class Counsel</u>

The settlement agreement provides that the $5,000,000 settlement fund "includes, subject to Court approval, payment of attorneys' fees of up to one-third (1/3) of the Settlement Fund, as well as Class Counsel's reasonable costs and litigation expenses." ECF No. 77-1 at 9 § 2.7. Counsel's costs are estimated at $26,367.01. Id. at 10 § 2.7.1.1. These fees and costs

would be paid within two weeks of the Court's entry of a final approval of the settlement. Id. at 11 § 2.9, 4 § 1.9.

The settlement agreement provides: "Within fifty (50) days after the entry of the Order Directing Notice to the Class, Class Counsel shall make an application to the Court for an award from the Settlement Fund for attorneys' fees not to exceed one-third of the total Settlement Fund plus reasonable costs and litigation expenses." Id. at 19 § 9.1. "Any amount requested and not awarded by the Court shall be delivered to the *cy pres* recipient pursuant to section 2.12 above." Id. The settlement agreement expressly prevents Plaintiff, class counsel, or the class members from terminating the settlement because of any "failure of the Court or any appellate court to approve in full the request by Class Counsel for attorneys' fees, costs and other expenses." Id. at 20 § 10.2.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "A thorough judicial review of fee applications is required in all class action settlements." Prudential, 148 F.3d at 333 (quoting G.M. Trucks, 55 F.3d at 819)). "The reasonableness of the requested attorney fee awards and costs will be further scrutinized at the final fairness hearing, where the Court will have before it a motion for final approval of the class action settlement and a motion for attorneys' fees and costs" supported by data sufficient for the Court to apply a percentage-of-recovery, lodestar, or other analysis. HealthEC, 2025 WL 1603267 at *11.

## V.    Order

For all of the foregoing reasons, Plaintiff's unopposed motion for preliminary approval of the proposed class action settlement is **GRANTED** and,

17

**IT IS**, on this **26th** day of **June 2025**,

**ORDERED** that the Court hereby incorporates the terms of the proposed settlement agreement (the "Agreement") (ECF No. 77-1) for the purposes of this preliminary approval order, including the definitions set forth in the Agreement; and it is further

**ORDERED** that Plaintiff's request for preliminary approval of the settlement class for settlement purposes only is **GRANTED** as to the following class:

> All employees of [Defendant] or applicants for employment with Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report that was used by Defendant to make an adverse employment decision regarding such employee or applicant for employment, and for whom Plaintiff alleges Defendant failed to provide the employee or applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action, from June 22, 2020 through September 11, 2024,

and it is further

**ORDERED** that the Agreement appears, upon preliminary review, to be fair, reasonable, and adequate to the Class. Accordingly, the proposed settlement is preliminarily approved, pending a fairness hearing as provided for herein; and it is further

**ORDERED** that this action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes; and it is further

**ORDERED** that Plaintiff's request for the conditional appointment of Bruce E. Taylor as representative of the Settlement Class is **GRANTED**; and it is further

**ORDERED** that Plaintiff's request for the conditional appointment of James A. Francis, John Soumilas, and Lauren KW Brennan of Francis Mailman Soumilas, P.C., and Robert P. Cocco as settlement class counsel is **GRANTED**; and it is further

**ORDERED** that Plaintiff's request for the appointment of Verita Global as Settlement Administrator is **GRANTED**. The Settlement Administrator shall submit to the jurisdiction of this Court with respect to all aspects of the Agreement and is bound to follow all terms and conditions set forth in the Agreement, including those concerning the implementation, supervision, and administration of the Notice Plan, the administration of the claims processes, and any other duties provided for in the Agreement; and it is further

**ORDERED** that Plaintiff's request for approval of the proposed notice plan, including the email, mail, and long form notices attached as Exhibits C, D, and E to the Agreement, is **GRANTED**; and it is further

**ORDERED** that within the latter of fourteen (14) days of the entry of this Order and Defendant's receipt of the Settlement Administrator's Form 1099 and wiring instructions for the payment, Defendant shall make an initial deposit of $50,000 toward the Settlement Payment Amount into the Escrow Account to create the Settlement Fund; and it is further

**ORDERED** that within fifteen (15) business days of the entry of this Order, Defendant shall provide the Settlement Administrator with the Class List that identifies, subject to the availability of information in reasonably accessible electronic form, the names, Social Security Numbers, last known mailing addresses, and last known email addresses, if available, and the date that any pre-adverse action notice and copy of the relevant report was sent to such individual, of the Settlement Class Members. The Settlement Administrator shall proceed with the notice plan as set forth in the Agreement; and it is further

**ORDERED** that any Settlement Class Member wishing to object to the fairness of the Agreement must make a valid written objection postmarked no later than **September 27, 2025.** To exercise this objection right, the Class Member must provide written notice of the objection

19

via first class mail to the Clerk of Court, Class Counsel, and Defendant's Counsel. For an objection to be considered by the Court, the objection must also set forth: (i) the name of the Action; (ii) the objector's full name, address, email address, and telephone number; (iii) a statement with specificity of all grounds for the objection, accompanied by any legal support for the objection known to the objector or the objector's counsel; (iv) the number of times in which the objector has objected to a class action settlement within the five (5) years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case; (v) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application; (vi) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five (5) years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case; (vii) the identity of all counsel representing the objector who will appear at the Final Approval Hearing; (viii) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (ix) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (x) the objector's signature (an attorney's signature is not sufficient). The right to object must be exercised individually by an individual Class Member, not as a member of a group or subclass and, except in the case

of a deceased or incapacitated Class Member, not by the act of another person acting or purporting to act in a representative capacity; and it is further.

**ORDERED** that the Court shall conduct the Final Fairness Hearing on **November 20, 2025**, at **10:00 a.m.** in **Courtroom 3C of the Mitchell H. Cohen Building & U.S. Courthouse, 4th & Cooper Streets, Camden, New Jersey 08101**, to determine whether the proposed settlement should be approved as fair, reasonable, and adequate; whether a judgment should be entered approving the Agreement and dismissing the claims of the class; and, separately, whether the applications by Class Counsel for attorneys' fees and expenses and for a service award to the Representative Plaintiff should be approved; and to rule upon any other matters as the Court may deem appropriate. All briefs, memoranda, petitions and affidavits to be filed in support of final approval of the settlement and for an individual award to the Class Representative shall be filed not later than fourteen (14) days before the Final Approval Hearing. The Court reserves the right to alter the time and date of the Final Fairness Hearing without further notice to the Settlement Class Members other than that which may be posted by the Court and on the Settlement Website, but in no case will the Final Fairness Hearing occur on a date sooner than 120 days following the entry of this Order; and it is further

**ORDERED** that Class Counsel's application for attorneys' fees, expenses, and costs, shall be filed and served no later than fifty (50) days after entry of this order. The motion for final approval of the Agreement and Class Counsel's applications for attorney's fees, expenses, costs, and service awards to the Representative Plaintiff shall be considered independently from each other, and should any dispute arise that relates solely to the fees and award sought, the Court may, upon finding that the Agreement is fair, reasonable, and adequate, enter an

order approving the Agreement and reserve for a later date a decision as to the applications for fees and awards; and it is further

**ORDERED** that this Court retains exclusive jurisdiction to consider all further matters arising out of or connected with the Agreement; and it is further

**ORDERED** that in the event that the Agreement does not become final and effective for any reason, or if this Court (or an appellate court on appeal) does not grant final approval of the Agreement, the conditional certification of the Settlement Class shall be void and vacated without prejudice to any rights or defenses available to the parties to the Agreement before its execution.

s/ Matthew J. Skahill
MATTHEW J. SKAHILL
United States Magistrate Judge