**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**BRUCE TAYLOR**, on behalf of himself and
all others similarly situated,

     *Plaintiff*,

       v.

**J.B. HUNT TRANSPORT SERVICES, INC.**

     *Defendant*.

CASE NO. 1:22-CV-04832-CPO-MJS

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

For the reasons set forth in the accompanying Memorandum of Law, Plaintiff Bruce Taylor

hereby seeks final approval of the class action settlement preliminarily approved by this Court by

Order dated June 26, 2025 (Dkt. No. 78).

Respectfully submitted,

**FRANCIS MAILMAN SOUMILAS P.C.**
*s/ Lauren KW Brennan*
James A. Francis
Lauren KW Brennan
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600

Robert P. Cocco
**ROBERT P. COCCO, P.C.**
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
bob.cocco@phillyconsumerlaw.com

*Attorneys for Plaintiff and the Class*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**BRUCE TAYLOR**, on behalf of himself and
all others similarly situated,

    *Plaintiff*,

        v.

**J.B. HUNT TRANSPORT SERVICES, INC.**

    *Defendant*.

CASE NO. 1:22-CV-04832-CPO-MJS

### MEMORANDUM OF LAW IN SUPPORT OF
### FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis
Lauren KW Brennan
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600

**ROBERT P. COCCO, P.C.**
Robert P. Cocco
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
bob.cocco@phillyconsumerlaw.com

*Attorneys for Plaintiff and the Class*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................................................ iii

I.    Introduction ............................................................................................................1

II.   Nature and History of the Litigation .....................................................................3

III.  The Terms of the Proposed Settlement ..................................................................5

     A.    The Settlement Class..................................................................................5

     B.    Settlement Benefits ...................................................................................5

          1.    Practice Changes ...........................................................................5

          2.    Monetary Relief ............................................................................ 6

          3.    Attorneys' Fees and Expenses...................................................... 6

          4.    Individual Settlement and Service Award to Plaintiff................... 6

          5.    Costs of Notice and Administration ............................................. 7

     C.    Costs of Notice .........................................................................................7

IV.  Argument ................................................................................................................7

     A.    The Court Should Affirm Certification of the Settlement Class for
          Settlement Purposes ..................................................................................7

     B.    Final Approval of the Settlement Under Fed. R. Civ. P. 23(e)...............................8

          1.    The Settlement enjoys a presumption of fairness. ....................... 8

          2.    Final approval of the Settlement is warranted. ........................... 9

                a.    Plaintiff and Class Counsel have adequately represented the
                    Class .................................................................................. 12

                b.    The Agreement was negotiated at arm's length............................ 12

                c.    The relief to the Settlement Class is adequate considering all
                    relevant circumstances. ................................................... 13

                    1.    The costs, risks, and delay of trial and appeal. ...................... 13

                    2.    The effectiveness of any proposed method of distributing
                      relief to the Class. ................................................... 14

i

         3.    The terms and timing of the award of attorney's fees. .......... 15

         4.    Any ancillary agreements under Rule 23(e)(3)...................... 15

     d.    The settlement treats Settlement Class Members equitably. ........ 16

     e.    Other relevant Girsh factors support approval............................. 16

  C.    Approval of a Service Award and Individual Settlement to Plaintiff is Appropriate ........................................................................................................17

V.    Conclusion .........................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Becker v. Bank of New York Mellon Tr. Co., N.A.*,
  No. 11-6460, 2018 WL 6727820 (E.D. Pa. Dec. 21, 2018).....................................11

*Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
  No. 3:11-CV-754, 2014 WL 4403524 (E.D. Va. Sept. 5, 2014), *aff'd sub nom.*
  *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015).......................................................18

*Fernandez v. CoreLogic Credco, LLC*,
  2024 WL 3209391 (S.D. Cal. June 24, 2024)................................................................18

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)................................................................................. *passim*

*Henry v. Little Mint, Inc.*,
  2014 WL 2199427 (S.D.N.Y. May 23, 2014) ...............................................................18

*Jones v. DHL Express (USA) Inc.*,
  2021 WL 6752271 (W.D. Tenn. Mar. 16, 2021) ..........................................................18

*Magallon v. Robert Half Int'l Inc.*,
  2025 WL 1324248 (D. Or. May 7, 2025) ......................................................................18

*Michael v. Indiana Packers Corp.*,
  2010 WL 11681242 (N.D. Ind. 2010)............................................................................18

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016)............................................................................................8

*In re Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010)..........................................................................................11

*In re Prudential Insurance Company of America Sales Litigation*,
  148 F.3d 283 (3d Cir. 1998)........................................................................2, 9, 11, 12

*Robinson v. General Info. Servs., Inc.*,
  No. 2:11-cv-07782-PBT (E.D. Pa. Nov. 4, 2014) (Doc. 55) .......................................18

*Rodriguez v. Calvin Klein Inc, et. al*,
  No. 1:15-cv-2590-JSR (S.D.N.Y. Mar. 21, 2016) (Doc. 33)........................................18

*Sapp v. Experian Info. Sols., Inc.*,
 2013 WL 2130956 (E.D. Pa. May 15, 2013) ..........................................................18

*Saunders v. Berks Credit and Collections*,
 2002 WL 1497374 (E.D. Pa. July 11, 2002) ..........................................................13

*Somogyi v. Freedom Mortg. Corp.*,
 495 F. Supp. 3d 337 (D.N.J. 2020) ................................................................10, 11

*Stechert v. Travelers Home and Marine Ins. Co.*,
 2022 WL 2304036 (E.D. Pa. June 27, 2022) ....................................................17, 19

*Stoetzner v. U.S. Steel Corp.*,
 897 F.2d 115 (3d Cir. 1990) ...............................................................................9

*Sweda v. Univ. of Pa.*,
 2021 WL 5907947 (E.D. Pa. Dec. 14, 2021) ........................................................19

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) ...............................................................................10

**Statutes**

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x .......................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a) .............................................................................................7

Rule 23(b) .....................................................................................................7, 8

Fed. R. Civ. P. 23(e) ...................................................................................... *passim*

Rule 23(f) ........................................................................................................13

## I.    <u>INTRODUCTION</u>

Plaintiff Bruce Taylor (the "Plaintiff"), by his undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion for Final Approval of the proposed class action settlement with Defendant J.B. Hunt Transport Servs. Inc. ("Defendant" or "J.B. Hunt") as embodied in the Settlement Agreement submitted on November 8, 2024 and certification of a Settlement Class.[1] As discussed herein, the proposed settlement of this consumer class action brought under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), provides substantial relief for the Class and meets all of the standards for settlement approval under Rule 23(e). It should, therefore, be granted final approval as fair, reasonable and adequate as to all class members.

This Court conditionally certified a Settlement Class and preliminarily approved this settlement on June 26, 2025. Dkt. No. 78. Pursuant to the Preliminary Approval Order, notice of the pendency of this action, the terms of the proposed settlement, the opportunity to opt out, object or participate, and the date of the November 20, 2025 final approval hearing, was directed to 14,211 individuals by first class mail and email. *See* Declaration of Monica Murray with Respect to Implementation of the Settlement Notice Plan and Performance of Settlement Administration Activities ("Murray Dec."), attached hereto as Exhibit 1. Following returns of undeliverable notices, further tracing and re-mailing, the Settlement Administrator determined that a total of 13,391mailed notices were not returned as undeliverable, a notice success rate of 94%. Murray Dec. at ¶¶ 6-9.  The Settlement administrator also sent 12,860 emails notices, 12,081 of which were successfully delivered.  *Id.* at ¶ 12.

The settlement represents a fair and reasonable resolution for Settlement Class Members

---

[1]    Capitalized words in this Memorandum refer to defined terms in the Settlement Agreement.

for several reasons. First, the settlement provides economic relief to Settlement Class Members in the form of payments which are expected to be approximately $100 to Settlement Class Members who do not fall within the No-Notice Subgroup—and more for those who do fall within the No-Notice Subgroup[2]—and who did not opt out and whose notices were not returned undeliverable. These payments will be made automatically and guaranteed without any need of a Settlement Class Member to submit any claim information or produce documentation.

Second, the release given by Settlement Class Members is narrowly limited to the class claims asserted. The Released Parties specifically exclude any consumer reporting agency from which J.B. Hunt obtained the report that led to the adverse employment decision. Agreement, §1.22.

Third, the stage of the proceedings demonstrates the fairness and non-collusive nature of the settlement. It was only reached after approximately two (2) years of litigation and settlement negotiations, including those overseen by a nationally preeminent mediator.

Fourth, of the approximately 14,000 Settlement Class Members who were sent notice, only a single one requested to be excluded from the Class. Murray Dec. at ¶ 15. According to both the Settlement Administrator and the court record, no Class Member has filed an objection to the settlement. *Id.* at ¶ 16. These factors indicate a fair settlement.

For these reasons and for the reasons set forth in greater detail below, the settlement is fair, reasonable and adequate to the Settlement Class and satisfies all of the criteria that courts routinely apply for the approval of class action settlements. *See, e.g., In re Prudential Insurance Company of America Sales Litigation*, 148 F.3d 283 (3d Cir. 1998); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

---

[2] Currently anticipated to be in excess of $400, but the precise amount will depend on the number of $100 checks are uncashed. *See* Settlement Agreement at §§ 2.1, 2.7.

II.    **NATURE AND HISTORY OF THE LITIGATION**

This consumer class action brought under the FCRA was filed on June 22, 2022. This action was brought on behalf of applicants and employees of J.B. Hunt who were rejected, terminated, or otherwise subject to adverse employment action based upon the contents of consumer reports, without first being provided with notice and a copy of the report. Plaintiff filed the case in the Superior Court of New Jersey on June 22, 2022. The case was then removed to this Court by J.B. Hunt on July 29, 2022. Dkt. No. 1. Plaintiff filed an Amended Complaint on September 26, 2022 (Dkt. No.12), to which Defendant filed an Answer on October 10, 2022. Dkt. No. 13. The Amended Complaint asserts that Defendant systematically violated 1681b(b)(3) of the FCRA—the "pre-adverse action notice" requirement—by using consumer reports to make adverse employment decisions without first providing the subject consumer a copy of the report and summary of their rights under the FCRA.

Specifically, Plaintiff asserts that J.B. Hunt conducts background checks on job applicants and/or recently hired employees by obtaining consumer reports which purport to identify criminal history, as well as driving records, prior employment, and employment and education verification. Plaintiff asserts that J.B. Hunt relies on the results of these consumer reports to make employment eligibility determinations. Plaintiff further asserts that J.B. Hunt makes these eligibility decisions without first providing the applicant or employee notice and a copy of the report, as required by FCRA section 1681b(b)(3). Indeed, Plaintiff Taylor himself was never sent any notice at all before J.B. Hunt took adverse action against him. Plaintiff asserts that even where J.B. Hunt sent the notice, it was untimely because the adverse decision had already been made. Defendant denies Plaintiff's allegations and denies that it committed any violation of the FCRA. Defendant furthermore asserts that consumers to whom it sent allegedly untimely notice are subject to

additional defenses including a purported lack of Article III standing.

After entry of the initial scheduling order in November 2022, the parties embarked on written discovery, exchanging documents, requests for admission, and interrogatories. The parties identified and met and conferred concerning certain discovery disputes, and ultimately sought the assistance of the Court to resolve a dispute. Dkt. No.s 31-33, 38, 40, 41, 43. Following the Court's resolution of the dispute in November 2023, the parties continued to conduct discovery, including a substantial production of documents and data by J.B. Hunt bearing on class membership. Dkt. No.s 50, 51, 53.

Armed with sufficient information to discuss resolution of the case, the parties participated in a full-day in-person mediation session with the assistance of experienced private mediator Rodney Max, Esq. on June 28, 2024. Although the case did not settle at the mediation and the parties returned to a litigation posture, they continued to negotiate and ultimately reached an agreement in principle to resolve the case on a class basis in September 2024. Documenting a formal settlement agreement and related documents took additional time and included the preparation and exchange of drafts and a series of telephone and written negotiations concerning the specific terms and conditions of the agreement and exhibits to the agreement, including the proposed class notices and class forms. The parties finalized their agreement on November 8, 2024, resulting in the Settlement Agreement filed along with the Motion for Preliminary Approval (Dkt. No. 77).

As demonstrated by the significant discovery exchanged and the length of litigation, there is no doubt that the settlement presented for the Court's consideration is the result of hard fought, arm's length negotiations between the Parties.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

The essential terms of the settlement preliminarily approved by this Court are set out in the Settlement Agreement attached to the Motion for Preliminary Approval. Dkt. No. 77-1. The settlement is fair, adequate and reasonable in light of the relevant facts, the applicable law, and the value of the settlement to the Class.

### A.  The Settlement Class

The Settlement Class consists of all employees of Defendant J.B. Hunt Transport Services, Inc., or applicants for employment with Defendant residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report that was used by Defendant to make an adverse employment decision regarding such employee or applicant for employment, and for whom Plaintiff alleges Defendant failed to provide the employee or applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action, from June 22, 2020 through September 11, 2024. Agreement, § 2.1.  Individuals for whom Defendant has no record of sending any pre-adverse action notice at all make up the "No-Notice Subgroup." *Id.* at § 1.15.

### B.  Settlement Benefits

#### 1.  Practice Changes

A foundational part of the consideration negotiated in the Settlement is J.B. Hunt's agreement that since the filing of this lawsuit, it has implemented policies and procedures to fully comply with FCRA section 1681b(b)(3) for both job applicants and existing employees, and as part of this settlement agrees to continue to implement and follow such policies and procedures. Agreement at § 2.6.

### 2.  Monetary Relief

In addition to the practice change, the Settlement Agreement also provides for substantial financial consideration, requiring J.B. Hunt to establish a Settlement Fund of Five Million Dollars ($5,000,000.00). Agreement § 2.7.  All Settlement Class Members whose notices are not returned as undeliverable and who do not exclude themselves from the settlement will be entitled to an automatic cash payment from the Settlement Fund, without the need to make a claim. Agreement § 2.7.1. Settlement Class Members for whom J.B. Hunt has a record of sending notice will receive an automatic payment of $100.  *Id.* at § 2.10.  Any of those $100 checks that are uncashed will be combined with a reserve of approximately $2.3 million, and used to make pro rata payments Settlement Class Members who are part of the No Notice Subgroup.  *Id.* at §§ 2.7.1.4, 2.11.  These payments are expected to be in excess of $400 each.

### 3.  Attorneys' Fees and Expenses

Defendant has agreed to pay Class Counsel's reasonable attorneys' fees up to one-third of the Settlement Fund plus litigation costs and expenses, as awarded by the Court. Agreement § 2.7.1.1. The award shall include all fees, costs, and other expenses for all attorneys, their employees, consultants, and other agents who performed work in connection with this litigation. Class Counsel submitted their fee petition on August 15, 2025, and it was promptly posted on the settlement website to make it accessible to Settlement Class Members.  Dkt. Nos. 79-80. No objections have been submitted to the fee request here.  Ex. 1, Murray Decl. at ¶ 16.

### 4.  Individual Settlement and Service Award to Plaintiff

The Settlement Agreement further provides that Class Counsel will seek, and Defendant will not oppose, approval of an individual settlement and service award for the proposed Class Representative Bruce Taylor in the amount of $15,000.  Agreement §§ 2.7.1.3, 9.2. This amount encompasses an individual settlement for all of Plaintiff's individual claims against Defendant and an award for Plaintiff for his services to the Class throughout this litigation.  The notices in this matter informed

Settlement Class Members of Plaintiff's request for a service award, and no objections to this request were submitted. Ex. 1, Murray Decl. at ¶ 16.  As detailed below in section

5.   Costs of Notice and Administration

All costs of notice and administration will be paid from the Settlement Fund, including an initial payment which was deposited ten (10) days after entry of the Order Directing Notice to the Class.  Agreement at § 2.8.

**C.  Costs of Notice**

Costs associated with notice and settlement administration will be paid from the Settlement Fund, as set forth in the Settlement Agreement, §2.8.

**IV.   ARGUMENT**

**A.    The Court Should Affirm Certification of the Settlement Class for Settlement Purposes**

As this Court found in its thorough order granting preliminary approval of the Settlement Class, each of the elements of Fed. R. Civ. P. 23(a) is satisfied here, because the class is numerous, Plaintiff Taylor is an adequate and typical representative the Settlement Class, the case presents common questions of law and fact that can be resolved in a single litigation, and Class Counsel have adequately represented the class.  Dkt. No. 78 at pp. 5-7.  Furthermore, this Court found that the case satisfies Rule 23(b)(3) because main facts Plaintiff would need to prove at trial to establish liability—the employer's consideration of credit reports without notice to employees before making employment decisions—appear to be readily provable with the same evidence of Defendant's general corporate policies" thus satisfying the predominance standard.  *Id.* at p. 8. Furthermore, Rule 23(b)(3) superiority is satisfied in light of the size of the statutory damages

provided for in the settlement, which supports concentrating Settlement Class Members' claims in a single case rather than requiring each of them to litigate separately. *Id.*

Nothing that has happened since the preliminary approval order disturbs these careful findings, and the Court should affirm them by entering the proposed final approval order.

### B.   <u>Final Approval of the Settlement Under Fed. R. Civ. P. 23(e)</u>

The claims of a class may be settled only with court approval, and the court may approve a settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (citation omitted).

#### 1.   <u>The Settlement enjoys a presumption of fairness.</u>

A settlement enjoys an initial presumption of fairness when: "(1) the negotiations occurred at arms-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 436. The presumption of fairness is warranted here.

As to the first and second factors, this case involved hotly contested litigation, including lengthy discovery disputes, as detailed above and in connection with the Motion for Preliminary Approval. Dkt. No. 77. Thus, the Parties had substantial evidence available to them before engaging in arms-length settlement negotiations with the assistance of highly experienced and respected mediator Rodney Max.  Although their initial efforts at settlement were unsuccessful, the Parties continued their negotiations and were able to reach a resolution in principle in September 2024, reaching a final executed agreement on November 8, 2024.  Dkt. No. 77-1.

In other words, prior to reaching the Agreement, Plaintiff had engaged in extensive discovery on the FCRA claims and on class certification. By the time the parties were negotiating settlement terms, the parties had been in hotly contested litigation for nearly two years. As such, the stage of the proceedings and the ample discovery completed demonstrate that Plaintiff and Class Counsel have an adequate appreciation of the case. The vigorous litigation and the effort spent to resolve it amply demonstrate the arm's-length nature of the settlement.

As to the third factor, the Court recognized in its thorough order granting the motion for preliminary approval, Class Counsel are experienced and competent and have fairly and adequately represented the Settlement Class in this matter.  Dkt. No. 78 at pp. 6-7.  Class Counsel collectively have decades of experience litigating consumer class actions, as reflected in by the exhibits submitted in support of Plaintiff's Motion for an Award of Attorneys Fees Costs and Expenses Dkt. No. 79.

As to the last factor, of the approximately 14,000 Settlement Class Members noticed, *none* have objected to the Settlement. Ex. 1, Murray Decl. at ¶ 16. Though the lack of objections and the single exclusion is not determinative, the overwhelmingly positive reaction by the Settlement Class is a testament to the fairness, reasonableness, and adequacy of the Settlement. *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d Cir. 1990) ("only" 29 objections in 281 member class "strongly favors settlement"); *Prudential*, 148 F.3d at 318 (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected).

The Settlement is presumptively fair.

   2.    <u>Final approval of the Settlement is warranted.</u>

Under Federal Rule of Civil Procedure 23(e), the claims of a certified class "may be settled, voluntarily dismissed, or compromised only with the court's approval." In making class action

settlement determinations, courts must remain mindful that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

In 2018, the settlement provisions of Rule 23 were substantially revised with the goal of directing courts to consider a targeted "list of core concerns" to consider when determining whether to approve a proposed settlement. 2018 Advisory Committee Notes to Fed. R. Civ. P. 23. Courts are to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3]

Additionally, prior to the 2018 Amendments, the Third Circuit in *Girsh* provided a list of factors to consider as a guide. *Somogyi*, 495 F. Supp. 3d at 348 (citing *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability;

---

[3]    "Subparagraphs (a) and (b) of Rule 23 address the 'procedural fairness' of the settlement, while subparagraphs (c) and (d) address 'substantive fairness.'" *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 348 (D.N.J. 2020).

> (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (alteration in original). "These factors are merely a guide and the absence of one or more does not automatically render the settlement unfair." *Somogyi*, 495 F. Supp. 3d at 348.

The Third Circuit in *Prudential* points the parties to other considerations to address, when applicable, including:

> (1) [T]he maturity of the underlying substantive issues...the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved--or likely to be achieved--for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998). The Advisory Committee Notes to the 2018 Amendments caution that the "lengthy list of factors" applicable in each Circuit "can take on an independent life, potentially distracting attention from the central concerns that inform the settlement-review process." Moreover, the Rule 23(e) "factors overlap substantially with the factors identified by the Court of Appeals in *Girsh* and *Prudential*." *Becker v. Bank of New York Mellon Tr. Co., N.A.*, No. 11-6460, 2018 WL 6727820, at *5 (E.D. Pa. Dec. 21, 2018). Plaintiff accordingly begins the analysis with the considerations required by Rule 23(e)(2), mindful of the related, overlapping considerations specified in *Girsh* and

11

*Prudential.*

                         *a.       Plaintiff and Class Counsel have adequately represented the Class.*

Plaintiff Taylor has ably represented the Settlement Class since filing this case over three years ago. He answered discovery, remained in consistent contact with Class Counsel throughout the litigation, and has no interests antagonistic to the Settlement Class.

Additionally, the firms of Francis Mailman Soumilas, P.C. and Robert P. Cocco P.C. have zealously represented the Settlement Class from the outset of the case. Class Counsel have litigated this case with tenacity, pursuing the discovery necessary to identify the Settlement Class and pursue their claims above Defendant's vigorous objections. Class Counsel have adequately represented the Class.[4]

                         *b.       The Agreement was negotiated at arm's length.*

The Court must consider whether the settlement was negotiated at arm's length. FED. R. CIV. P. 23(e)(2)(B). *Girsh* also directs courts to consider "the stage of the proceedings and the amount of discovery completed," *Girsh*, 521 F.2d at 157, which both relate to Plaintiff's bargaining power in reaching the Agreement. Plaintiff had engaged in extensive discovery on the FCRA claims and on class certification. Furthermore, the Parties engaged a respected mediator with substantial experience in FCRA class litigation to mediate their claims. As such, the stage of the proceedings and the ample discovery completed demonstrate that Plaintiff and Class Counsel

---

[4]     Additional details about how Class Counsel have served the Settlement Class are set forth in Plaintiff's Motion for an Award of Attorneys' Fees Costs and Expenses to Class Counsel and the exhibits thereto. Dkt. No. 79.

have an adequate appreciation of the case. The hard-fought litigation and the effort spent to resolve it demonstrate the arm's-length nature of the settlement.

> c.    *The relief to the Settlement Class is adequate considering all relevant circumstances.*

This factor requires consideration of whether the class relief is adequate considering the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, the terms and timing of any proposed award of attorney's fees, and any agreement required to be identified under Rule 23(e)(3). FED. R. CIV. P. 23(e)(2)(C). All of these considerations support approval of the settlement here.

> 1.    <u>The costs, risks, and delay of trial and appeal.</u>

This case involved substantial risk for Plaintiff and Class Counsel. Filed in December 2022, the case is over three years old. Liability and class certification were litigated at considerable expense of time and manpower. But for this Agreement, Plaintiff would have faced the task of certifying a class on contest. Defendant would be expected to vigorously oppose certification, and even if class certification were granted, it would not be surprising if Defendant pursued an interlocutory appeal under Rule 23(f). Alternatively, even if the case were certified, it is likely that Defendant would seek decertification, either before trial, during trial or on appeal. *See Saunders v. Berks Credit and Collections*, 2002 WL 1497374, *12 (E.D. Pa. July 11, 2002). While the success of such attempts is uncertain at best, the settlement allows Plaintiff and the Settlement Class to avoid the delay and expense that would be associated with such proceedings.

Even success at certifying a class on contest and maintaining that class through trial would not guarantee the benefits obtained through this Settlement, since any class would face the hurdles of dispositive motion practice and risks and uncertainty of trial. Regardless of the outcome on

liability or damages at trial, there would almost certainly be an appeal. The post-trial and appeal process in this case could span another several years with an uncertain outcome.

All of these factors weighed into Plaintiff's decision to agree to settle the case, which provides for real relief to each Settlement Class Member, with a minimum of $100 automatic payments, with more to be provided to Settlement Class Members who were not sent any pre-adverse action notice at all. This is after payment of approved attorney fees, litigation expenses, service award, and administrative costs. This minimum payment amount is within the range of statutory damages provided for by the FCRA for willful violations. 15 U.S.C. § 1681n. In addition, J.B. Hunt has agreed to practice changes to increase the prospects for ongoing FCRA compliance. In light of the substantial risks involved and the additional delays associated with further litigation, this Settlement is an excellent result.

    2.  <u>The effectiveness of any proposed method of distributing relief to the Class.</u>

As mentioned, the Agreement calls for all Settlement Class Members to be sent not less than $100.00. Ex. 1, Agreement at § 2.7.1. Any of those $100 checks that are uncashed will be combined with a reserve of approximately $2.3 million, and used to make pro rata payments Settlement Class Members who are part of the No Notice Subgroup. *Id.* at §§ 2.7.1.4, 2.11. These payments are expected to be in excess of $400 each.

Any funds remaining in the Settlement Fund after checks to members of the No Notice Subgroup are stale and all other payments approved by the Court have been made will be distributed to *cy pres* beneficiary the National Consumer Law Center. Founded in 1969, the NCLC is a nonprofit that has "used its expertise in consumer law and energy policy to work for consumer justice and economic security for low-income and other disadvantaged people, including older adults, in the U.S." NCLC, "Mission," https://www.nclc.org/about-us/mission/ (last visited

14

November 6, 2025). It works in the courts and with policymakers across the United Stated "to stop exploitative practices, help financially stressed families build and retain wealth, and advance economic fairness." *Id.*

To ensure that both Settlement Notice and payments to Settlement Class Members are issued to correct addresses, the Settlement Administrator processed the names and addresses through the National Change of Address Database ("NCOA") to update any addresses on file with the United States Postal Service ("USPS"). Ex. 1, Murray Decl. at ¶ 5. This ensures that when checks are issued to those Settlement Class Members, such checks are mailed to the most up-to-date address. As such, the effectiveness of the method of distribution of monetary relief to the Settlement Class Members supports approval.

3.     <u>The terms and timing of the award of attorney's fees.</u>

On August 15, 2025, well before the September 27, 2025 deadline for Settlement Class Members to object or opt out, Plaintiff filed a motion for attorney fees and expenses from the common fund. Dkt. Nos. 79-80. The amounts of attorneys' fees and expenses sought were disclosed to Settlement Class Members in the notices. Ex. 1, Murray Decl. and exhibits thereto. As explained in more detail in Plaintiff's Motion for attorney fees and expenses, the attorneys' fees and expenses reimbursement are fair here.

4.     <u>Any ancillary agreements under Rule 23(e)(3).</u>

Other than the Settlement Agreement itself, Plaintiff has not entered into any agreements for which he seeks Court approval.

15

d.    *The settlement treats Settlement Class Members equitably.*

The Agreement provides meaningful relief to the Settlement Class and treats all Settlement Class Members equitably relative to each other and in light of the available evidence and applicable legal standard.

Under the Agreement, all Settlement Class Members to whom J.B. Hunt sent a pre-adverse action notice which Plaintiff asserts was untimely will receive an equal payment of $100.00. Members of the No Notice Subgroup, who according to J.B. Hunt's records indicate were sent with no notice all and thus with even stronger arguments with respect to both merits and damages, will receive a higher payment expected to be at least $400.00.  As this Court noted in granting preliminary approval, "the parties have appropriately structured the settlement to limit unbalanced receipt of funds by differently situated class members [.]" Dkt. No. 78 at p. 9.

Additionally, all Settlement Class Members will provide the same limited release of claims related only to J.B. Hunt's alleged failure to comply with FCRA section 1681b(b)(3), preserving any other claims that Settlement Class Members may have.

e.    *Other relevant Girsh factors support approval.*

The Third Circuit in *Girsh* directed parties to consider factors such as the range of reasonableness of the settlement fund in light of the best possible recovery. *Girsh*, 521 F.2d at 157.

As noted, the Agreement creates a Settlement Fund of $5,000,000.00. It also includes practice changes that required J.B. Hunt to confirm that its practices are in compliance with the FCRA's pre-adverse action requirement. Dkt. No. 77-1, Agreement § 2.7. This equitable-type relief certainly has value, though difficult to pinpoint. Notably, the FCRA does not provide for any equitable relief whatsoever, meaning that the proposed settlement is in some respects more favorable than what Plaintiff could have obtained at trial from a jury.

16

For negligent violations, the FCRA's remedies are limited to actual damages. 15 U.S.C. § 1681*o*(a). For willful violations, as relevant here, the Act also provides for damages of up to $1,000 per person plus punitive damages. 15 U.S.C. § 1681n(a). The relief provided by the Settlement thus provides relief commensurate with what could have been awarded a trial upon a jury's finding of a willful violation and is reasonable given the risks of proceeding through trial and appeal.

Accordingly, the relevant *Girsh* factors (that are not subsumed by the Rule 23(e) factors) also support approval.

### C.  Approval of a Service Award and Individual Settlement to Plaintiff is Appropriate

Class Counsel also seek this Court's approval of an individual settlement and service award of fifteen thousand dollars ($15,000.00) for Plaintiff Bruce Taylor. In this case, there would be no benefit to Class members if the Plaintiff had not stepped forward. Mr. Taylor devoted significant time and energy to the litigation, including reviewing documents, assisting with compiling responses to written discovery requests and consulting with counsel as necessary. He has totally fulfilled his obligations as a class representative. Without Mr. Taylor's involvement, this lawsuit would not have happened, Settlement Class Members would not have received any recovery, and J.B. Hunt may not have updated its practices to comply with the FCRA. *Stechert v. Travelers Home and Marine Ins. Co.*, 2022 WL 2304036, at *15 (E.D. Pa. June 27, 2022) (awarding $40,000 to married couple serving as class representatives).

Class Counsel therefore request that Mr. Taylor be approved for the award described above and as set forth in the Settlement Agreement. The award represents actual and statutory damages under the FCRA, as well as recognition of the benefits and value of the settlement that the Plaintiff

achieved for the Settlement Class.[5] Class members were notified that Class Counsel would request an award for the Representative Plaintiff in this amount and no objections to that proposed award were filed.

This award is well within the range of awards made in similar cases. *See Magallon v. Robert Half Int'l Inc.*, 2025 WL 1324248, at *5 (D. Or. May 7, 2025) (awarding $15,000 individual settlement and service award to class representative in FCRA section 1681b(b)(3) action); *Rodriguez v. Calvin Klein Inc, et. al*, No. 1:15-cv-2590-JSR (S.D.N.Y. Mar. 21, 2016) (Doc. 33) (final approval order awarding $15,000 in class representative in recognition of settlement in FCRA section 1681b(b)(3) case); *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc*., No. 3:11-CV-754, 2014 WL 4403524, at *4 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015), at *16 (awarding $5,000 to each of several class representatives); *Robinson v. General Info. Servs., Inc.*, No. 2:11-cv-07782-PBT (E.D. Pa. Nov. 4, 2014) (Doc. 55) (final approval order awarding $10,000 individual settlement to class representative); *Sapp v. Experian Info. Sols., Inc.,* 2013 WL 2130956 (E.D. Pa. May 15, 2013) at *3 (awarding $15,000 to class representative in FCRA settlement).

Furthermore, the service award represents only a tiny fraction of the $5 million Settlement

---

[5]    In the preliminary approval order, the Court requested that Class Counsel "clarify th[e] allocation" between service award and individual settlement.  Dkt. No. 78 at p. 7 fn. 2.  There is no allocation between these elements of Mr. Taylor's recovery.  Rather, the magnitude of Mr. Taylor's proposed award reflects the fact that he is providing a broader release than other Settlement Class Members, of all claims he may have against J.B. Hunt, rather than the class member release which is limited to FCRA section 1681b(b)(3). *See Fernandez v. CoreLogic Credco, LLC*, 2024 WL 3209391, at *23 (S.D. Cal. June 24, 2024) (considering broader release signed by class representative when approving service award in FCRA class settlement); *Magallon*, 2025 WL 1324248, at *5 (same); *Michael v. Indiana Packers Corp.*, 2010 WL 11681242, at *4 (N.D. Ind. 2010); *Jones v. DHL Express (USA) Inc.*, 2021 WL 6752271, at *1 (W.D. Tenn. Mar. 16, 2021); *Henry v. Little Mint, Inc.*, 2014 WL 2199427, at *11 (S.D.N.Y. May 23, 2014).

Fund achieved as a result of Mr. Taylor's willingness to put his name to this lawsuit – only 0.3%. Courts in this circuit have repeatedly approved service awards in excess of 1% of the total monetary payment provided by the settlement. *Stechert*, 2022 WL 2304036, at *16 (approving service award of 1.1% of fund). Indeed, awards of 3.1 to 3.5 percent of the monetary value of the settlement have been approved as proportional. *Sweda v. Univ. of Pa.*, 2021 WL 5907947, at *8 (E.D. Pa. Dec. 14, 2021) (granting service awards representing only 1.15% of the total monetary payment) (citing *Johnson v. Free State Mgmt. Grp.*, 2021 WL 2711528, at *7 (E.D. Pa. July 1, 2021)).

Defendant does not oppose this award, and no member of the Settlement Class has objected to the amount. Ex. 1, Murray Decl. at ¶ 16. Accordingly, the award requested for the Plaintiff should be approved.

## V.    CONCLUSION

For all the reasons that the Court granted preliminary approval in this matter, in light of the highly favorable response of the Settlement Class, and because it represents an excellent result for Settlement Class Members and consumers who will be benefitted in the future based on the practice changes secured by the Settlement, Plaintiff requests that the court grant final approval of the settlement.

Dated: November 6, 2025

Respectfully submitted,

FRANCIS MAILMAN SOUMILAS, P.C.

/s/ *Lauren KW Brennan*
James A. Francis
Lauren KW Brennan
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600

Robert P. Cocco
ROBERT P. COCCO, P.C.

19

1500 Walnut Street, Suite 900
Philadelphia, PA 19102
bob.cocco@phillyconsumerlaw.com

*Attorneys for Plaintiff and the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this day, a true and correct copy of the foregoing has been filed electronically and is available for viewing and downloading from the federal courts' Electronic Cases Files system. A copy of the foregoing has been served on counsel of record via a Notice of Electronic Filing generated by the ECF system.

DATED:        November 6, 2025                    *<u>/s/ Lauren KW Brennan</u>*
                                                  Lauren KW Brennan